ORLANSKY *v.* JOHNSON ET AL.

[74 South. 113, Division A.]

1. BANKS AND BANKING. *Receivership. Compositiion with officers. Effect.*

   Where the receiver of a bank brought suit against the directors for mismanagement and loss of its funds, the chancery court had jurisdiction to authorize a settlement by the receiver with such directors and when such settlement was executed, the dirctors were discharged from all liabilities to the bank, its stockholders or creditors.

2. PLEADING. *Construction. Presumptions.*

   Where a bill by the receiver against the directors of a bank to recover for loss of funds of the bank caused by the mismanagement of the directors, exhibited a settlement on order of the chancery court between the directors and the receiver, and did not deny the making of such settlement, the court on appeal must accept the contents of such exhibit as true.

3. BANKS AND BANKING. *Mismanagement of funds. Liability of directors.*

Directors of a bank are not liable for mismanagement of the bank prior to their incumbencies as such directors.

APPEAL from the chancery court of Leflore county.

HON. JOE MAY, Chancellor.

Suit by A. Orlansky against W. T. Johnson and others. From a decree sustaining demurrers, complainant appeals, and from a decree overruling other demurrers, defendant cross-appeal.

The facts are fully stated in the opinion of the court.

*M. B. Grace,* for appellant.

The demurrers sustained to the original bill were sustained upon the theory, and upon the ground that no petition had been filed with the court praying the permission of the court to sue the alleged receiver of the said bank, on the grounds he was an officer of the court. Then when the amended bill was filed, it was demurred to by the officers and directors of said bank on the ground, the original bill had annexed to it a copy of a decree of the chancery court which gave to the receiver the power to release each of the said parties from further civil liability, upon paying to the receiver so much money. This original bill was not before the court. The court had to reach back to the allegations of the original bill, a bill which was dead, for the purposes of this suit, to get this information.

If we are in error as to our contentions in this respect, we then insist that the matter of release cannot be raised by demurrer. A release is a contract by which a party is forgiven and released in a matter, and in order for a party to get the benefit of a release, he must set same up in his answer, or plead it by plea to the bill. The demurrer tests the sufficiency of the amended bill; that is, granting all the allegations in said amended bill to be true, yet there is no equity on the face of the

bill and the allegations do not show a right in the appellant. We think if what we set up in the amended is true, there is a cause of action in the appellant and the appellant has the right to file this bill. The court said so in the case of *Ellis* v. *Gates Mercantile Co.*, in 103 Miss. 560. This case is before this court on a question of pleading, pure and simple. If the decree of the lower court is reversed and the demurrer overruled, then it will be up to the appellees to answer the bill. The appellees may, in their answers set up the decree of the court giving them the right to pay to the receiver a certain amount of money and be released. If they do, they will be required to file a copy of the bill praying for the appointment of R. V. Pollard receiver for the said bank, the notice and the return of the officer serving it, a copy of the decree of the court appointing R. V. Pollard receiver, a copy of this bond, etc., and by their answer, they will be required to show that they complied with the decree and did pay to R. V. Pollard the amounts of money set forth in the decree, and he executed to each of them a release or acquittance from further liability. They will be required to set up the release executed by Mr. Pollard, and show he was the proper party for them to pay said money to and to receive the said release. If when they make their answer, and that their answer does not show Mr. Pollard was the right man and that the court had jurisdiction to appoint him as receiver for this bank, and all the parties had notice as required by the statute, especially that this appellant had notice, or that he expressly waived notice, their release would not be worth the paper it is written on. A court cannot say to a man, you take certain medicine, when that man has no notice that the court is going to give him a certain kind of medicine. If there was a sufficient cause of action alleged to require Walton and Swift to answer the amended bill, there was a sufficient cause of action to require all the other defendants to answer it.

Sustaining the demurrer of W. T. Johnson et al., to the amended bill in this case is, we think, equivalent to saying to the complainant; by the court: You should have been before the chancery court and registered your objections there at the time Mr. Pollard filed his bill and asked for instructions, or, when Mr. Pollard was appointed, whether you had any notice or not, and because you were not there, you have lost all your rights against these parties. It is equivalent to taking his property without due process of law.

The amended bill in this case makes out a case against each of these defendants, and if the complainant proves the allegations of his amended bill, and the defendants do not offer some defense, that is, facts, not law, to off-set this proof, then the court should enter a decree for the complainant. So we say, when the release is offered as a bar, or as a defense, its validity is bound to be called into question, and sustaining this demurrer on this ground, cuts the complainant off from showing to the court that the release, if one was ever granted, was void; and too, from showing that the defendants never complied with the alleged decree and paid the money to the alleged receiver.

Counsel intimates, if they do not contend, that the appellees in this suit are not liable because they were not officers and directors during the time the appellant was a stockholder in the banking concern. We invite the attention of the court to the amended bill on this proposition. Each of the appellees were either an officer or director in this bank during all the while that appellant was a stockholder in the said bank. Certainly it would have to be by and because of the negligence and mismanagement of the officers and directors of the bank, while the appellant was a stockholder, in reference to the affairs of the bank, that he lost his stock, for them to be liable to him. We are unable to understand the reason for raising this proposition in this case, and citing the cases of *Bank of Mutual Redemption* v. *Hill*,

56 Me. 385, 96 Am. Dec. 470; *Emerson* v. *Gaither,* 104 Md. 464, 64 Atl. 26, 7 Ann. Cas. 1114, 8 L. R. A. (N. S.) 738. Neither of these cases are in point, and have no bearing upon the real question at issue in this case.

*Hill & McBee,* for cross-appellants.

This is a case which comes to this court on appeal from the chancellor sustaining the demurrers of all the defendants named in the bill except the demurrer of H. L. Walton and W. A. Swift, which was filed by them jointly, as their case was identical, and from this decree sustaining these demurrers the appellant, who was complainant in the court below, has appealed, and H. L. Walton and W. A. Swift have filed their petition for cross-appeal.

So far as the cross-appellants are concerned, we rely on the bill and the demurrer, and think that the grounds of the demurrer are valid, and should have been sustained. The bill filed by Orlansky was against the directors and officers of the Bank of Leflore, and charged them with fraudulently selling him certain stock in said bank on the 14th day of February, 1901, representing that the stock was valuable and that the bank was in good condition, when, as he alleges, the bank was insolvent and not in good condition, and, according to the allegations of the bill, was a "mere shell" and not a bank, and that the officers of the bank fraudulently sold him worthless stock, which he seeks to recover the value of in this suit.

There is no allegation in the bill that Walton and Swift were officers of the bank at the time this stock was sold, or that they had anything to do with the management of the bank prior to or at the time Orlansky bought the stock, or had anything to do with the sale of stock. On the other hand, it is positively alleged that Walton and Swift became directors of the bank in the year 1912, about two years after the stock was

sold to Orlansky, and it is not alleged that they were even stockholders in the bank at the time Orlansky's sale was perfected, and is not alleged that they had any connection with the bank.

We contend that under the allegations of the bill Walton and Swift are clearly exonerated from any wrongdoing or liability, and that the demurrer which they filed should be reversed as to them on their cross-appeal for the same reasons stated and set forth in the demurrer and which have heretofore been set forth.

*Gwin & Mounger,* for appellees.

The directors named in the bill were not all of the directors of the bank. The original bill names Young and Reiman and Lomax as directors; and the directors for whom this brief is filed may have been in the minority and may have voted against the alleged dividends. There is no charge that these particular directors voted for or participated in or consented to any of the acts or omissions complained of. It is probable that they did not and they should have specific charges, so as to meet them. One director is not chargeable with another's fault or action. Each is chargeable only with his own acts and negligence.

"Directors are, of course, liable only for the official mismanagement which occurs during the time of their directorship; they cannot be held liable for the mismanagement of either of the directors preceding them or of those following them." 3 Ruling Case Law, Banks, sec. 87, p. 459; *Bank of Mutual Redemption* v. *Hill,* 56 Me. 385, 96 Am. Dec. 470; *Emerson* v. *Gaither,* 103 Md. 464, 64 Atl. 26, 7 Ann. Cas. 1114, 8 L. R. A. (N. S.) 738.

The original bill had as Exhibit B. a decree of the chancery court of Leflore county, Mississippi, the court administering the assets of the bank of Leflore, and in which the receivership is pending; and this decree is in

the record in this cause and before this court. This decree shows that the receiver was authorized to make settlement with grant an acquittance and release to all of the defendants who were directors and for whom this brief is filed, upon the payment of certain sums of money. "From any and all liability to the said bank, its depositors and creditors, officers, directors and stockholders, and to said receiver, on account of any and all liability of said parties, respectively, arising out of any negli-gence or improvident act or omission in the performance of the duties and tenure of their respective officers in said bank and on account of any withdrawals by them, or any of them, of their own funds deposited in said bank to them as stockholders, and on account of their ownership of shares of stock, respectively, held by them in said bank. "Nothing of which complainant complains is omitted, and the original bill, alleges that the receiver refused to bring this suit because of the fact that said parties had made the payments provided and had received a release from said receiver as provided in said decree.

The amended bill, in paragraph XL, refers to the reply of the receiver to complainant's petition to the receiver as exhibit (Exhibit B) to the amended bill, "and a part of the same." The petition to sue sets forth all of the grounds of complaint contained in the amended bill and the reply of the receiver shows that all of the defendants, except Wilson, Swift and Walton, have made settlement with the receiver, pursuant to the order of the court, for all derelictions complained of in said petition, and that they now hold the receiver's release therefrom, and that relying upon the decree of the court, the receiver's release and the advice of the agents and attorneys for said receiver, the officers and directors, except those above excepted, mentioned in the petition, paid to the receiver the sum of seventy-seven thousand, five hundred dollars; and this is assigned by the receiver as the reason for the refusal of the receiver to sue; and we submit that it is a good and sufficient reason and a

bar to recovery on any of the complaints set forth in the amended bill of complaint.

But it is contended that the court has no right to look at the decree which is made Exhibit B to the original bill. It is argued that this is no part of the record; that because complainant ignores it in the body of the amended bill the court can have no knowledge of it; in other words, that the court is blind, and deaf, and without memory or powers of reasoning.

This decree is a part of the record in this cause and the court cannot ignore it. Moreover the exhibits to the amended bill show the settlement and compromise and release under the decree of the court of all of the defendants, except Swift, Walton and Wilson. Counsel argues that Ray is not mentioned in the decree, Exhibit B to the original bill, and this is true, but that decree only provides for the payment of seventy-five thousand dollars by the parties named in it. Ray was not a director of the bank, and only a ministerial officer, and he is not charged in the bill of complaint with any misconduct or negligence whatever, but the reply of the receiver to the petition of the complainant expressly states that all of the officers and directors named in the petition except Walton, Swift and Wilson, had made settlement authorized by decree of the court and had paid the sum of seventy-seven thousand, five hundred dollars and had been released by the receiver. This expressly includes and names Ray; and it accounts for the extra twenty-five thousand dollars as having been paid by him to the receiver.

In *Weir* v. *Jones,* 84 Miss. 610, a suit to set aside an alleged sale of land on foreclosure of a deed of trust, the original bill of complaint recited that there was attached to it as an exhibit a copy of the deed from the substitute trustee to the defendant, and such deed made the instrument appointing the substitute trustee a part of the conveyance, and the deed and appointment were copied into the record, and although the deed and appointment

of the substitute trustee were not again made exhibits to the amended bill, it was referred to in the amended bill and this court held that the appointment constituted a part of the record present before the court on the appeal and for its consideration.

The exhibits are part of the bill and will control. *House* v. *Gumble,* 78 Miss. 259; *McNeill* v. *Lee,* 79 Miss. 455; *Weir* v. *Jones,* 84 Miss. 610; *Jones* v. *Rogers,* 85 Miss. 802; *McKinney* v. *Adams,* 95 Miss. 832.

SYKES, J., delivered the opinion of the court.

The appellant, A. Orlansky, filed an original bill in the chancery court of Leflore county against W. T. Johnson and certain other parties who were, or had been, directors and officers of the Bank of Leflore, and also against R. V. Pollard, receiver of said bank. Defendants filed demurrers to the original bill, which demurrers were sustained and an amended bill was then filed. Before the filing of this amended bill the complainant had petitioned the receiver of the bank to file this suit himself, and the receiver had declined to do so, giving his reasons therefor. Permission was then obtained from the chancellor to make the said receiver a party defendant to this suit. The gravamen of the amended bill is as follows: The complainant was a stockholder in the bank at the time of its failure and filed the bill on behalf of himself and other stockholders who desired to join with him in the suit. The amended petition further alleged that the bank of Leflore was a bank organized under the laws of the state of Mississippi, incorporated in 1902, and domiciled at Greenwood. It then names the directors elected in 1910 and the officers then elected by the directors. That complainant purchased his stock in February, 1910. At that time one Robert Wilson was cashier of the bank, but in January, 1912, Robert Wilson resigned, and G. L. Ray was elected cashier. At this same meeting in 1912 W. A. Swift and H. L. Walton, two of the defend-

ants herein, were elected as additional directors of the bank. It alleges that before complainant purchased his stock the bank had suffered heavy losses, and its capital stock had been misappropriated, lost and wasted until it was practically worthless; that the officers and directors knew of this fact, or should have known it, at the time he bought the stock; that he, the complainant, was ignorant of the financial condition of the bank; that before and at the time of the purchase of this stock the officers and directors of the bank held it out to the public as a safe and solvent banking institution and made false written reports of its condition; that the officers and directors of the bank had represented to complainant that the bank was solvent and that he believed this, when as a matter of fact it was all untrue; that before he purchased the stock, through certain sham manipulations, the bank purchased from one A. G. McLemore, who was then an officer and director of the bank, five hundred and twenty-three and one-half shares of the stock of the bank for which they paid more than one hundred thousand dollars; that this transaction weakened the bank and rendered it practically insolvent, which fact was known to the officers and directors; that the bank sustained other heavy losses by making unlawful and improvident loans without adequate security; that when the bank was organized it adopted certain rules and by-laws which were in full force and effect when the bank failed; that these rules and by-laws were binding on the officers and directors of the bank; that under these rules the directors were required to appoint a committee to count the cash, compare the assets and liabilities, examine the books of the bank, and perform other duties; that the directors failed to carry out these rules and by-laws; that a short time before the bank failed certain of its officers and directors, knowing its weakened condition, and being heavy depositors in the bank, withdrew their deposits from said bank, thereby causing it to collapse; that, notwithstanding the insolvency of the bank caused

by the unlawful McLemore deal, the directors declared
large dividends each year; that it was the duty of the
directors to exercise care and skill in managing the af-
fairs of the bank; that in January, 1913, the bank be-
came insolvent and failed, and R. V. Pollard was ap-
pointed receiver; that the receiver had been requested
by him to bring this suit in his capacity as receiver,
but that the said receiver declined to do so, as is shown
by a letter from the said receiver to the counsel for the
complainant, together with a letter from Messrs. Gwin
& Mounger, counsel for the receiver; both of these above
letters are attached to the bill and made exhibits thereto;
that permission was then obtained from the chancery
court to join the receiver as a party defendant.

The complainant asked that the receiver in his answer
show the condition of the bank on the date of the purchase
of the stock of the complainant in the bank and show
whether or not the officers and directors had perpetrated
a fraud upon the complainant and the other stockholders
and show how the bank was conducted and carried on
from time to time. Along this line the bill, in short, asks
that the receiver in his answer give an entire history of all
of the transactions of the bank from the date of its incor-
poration to the date of its failure. The prayer for relief,
after asking for all of the information from the receiver
that he could obtain from an audit of the bank books by an
expert accountant through its entire history, then prays
that on final hearing complainant be awarded a personal
decree against all of the officers and directors of the
bank for the amount of the stock owned by him and other
stockholders, parties to this suit, which was rendered
worthless by reason of the insolvency of the bank by neg-
lect, fraud, and unlawful action of the officers and di-
rectors (no other stockholders joined in the suit). It
then stated the usual prayer for general relief. The
letter of the receiver in which he declines to bring this
suit and the letter from Messrs. Gwin & Mounger, both
of which letters are made exhibits to the bill, show that

the reason the receiver declined to bring this suit was that during the pendency of the receivership in the chancery court of Leflore county that court entered an order authorizing the receiver to make a settlement with certain of the officers and directors of the bank for the sum of seventy-seven thousand, five hundred dollars; that all of the parties defendant to the amended bill have made settlement under this decree of the chancery court except H. L. Walton and W. A. Swift. Demurrers were filed by all of the defendants to the amended bill. The demurrers of H. L. Walton, W. A. Swift, and R. V. Pollard, receiver, were overruled, and the demurrers of the other defendants were sustained. Complainant prosecutes this appeal from the decree sustaining these demurrers, and Messrs. Walton and Swift prosecute a cross-appeal from the decree overruling their demurrers. No cross-appeal is prosecuted by the receiver.

We think the action of the court below was correct in sustaining the demurrers of the appellees. The letter of the receiver and of his attorneys show that these appellees made a settlement with the receiver by virtue of a decree of the chancery court of Leflore county. There was no appeal from the decree authorizing this settlement to be made. It was within the jurisdiction of the court to authorize this settlement, and it is therefore a valid and binding one, and these appellees by accepting and making that settlement have been discharged from all liabilities to the bank or its stockholders or other creditors.

That this settlement was made was shown by the exhibits to the amended bill, and was not denied or controverted in said bill; consequently we must accept as true the contents of the exhibits. *House* v. *Gumble,* 78 Miss. 259, 29 So. 71; *McNeill* v. *Lee,* 79 Miss. 455, 30 So. 821; *Weir* v. *Jones,* 84 Miss. 610, 37 So. 128; *McKinney* v. *Adams,* 95 Miss. 832, 50 So. 474.

The gravamen of the bill is that the officers and directors and cashier of the bank were guilty of negligence and

neglect of duty and misappropriation of the bank's funds all prior to the year 1912, when H. L. Walton and W. A. Swift became directors in the bank. There are no charges whatever in the bill of any negligence or mismanagement on the part of the directors from January 1, 1912, to the time the bank went into the hands of a receiver in January, 1913, or during the incumbency of office as directors of Messrs. Walton and Swift. There is neither a general nor specific charge of negligence, misappropriation, or neglect of duty on the part of either of these directors within that time. For this reason the court should have sustained their demurrers to the amended bill.

The case will be affirmed on direct appeal, reversed on cross-appeal, and remanded.

*Affirmed on direct appeal, reversed on cross-appeal, and remanded.*